IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-573

Filed 21 March 2023

Henderson County, Nos. 14JT70 15JT136

IN THE MATTER OF: K.M.C. & M.C.C.

Appeal by defendant from judgment entered 20 April 2022 by Judge Gene Johnson in Henderson County District Court. Heard in the Court of Appeals 21 February 2023.

*Mercedes O. Chut, for the respondent-appellant mother.*

*Susan Davis, for the petitioner-appellee.*

*Battle, Winslow, Scott & Wiley, PA, by M. Greg Crumpler for guardian ad litem.*

TYSON, Judge.

Tanya Butler Carroll ("Mother") appeals from an order entered on 20 April 2022, which terminated both Mother's and Father's parental rights. Mother appeals. We affirm.

## I. Background

Henderson County Department of Social Services ("DSS") obtained custody of Mother's children, Kevin and Michael, who were adjudicated neglected juveniles on three separate occasions. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). The Guardian Ad Litem's Court Report asserted "[d]rug abuse is the root cause of what has brought these children into [DSS's] custody three times."

The juveniles were first adjudicated as neglected on 14 January 2016 after Mother and Father were arrested for felony and misdemeanor drug charges. Twenty-two-months old Kevin and six-months old Michael were present when their parents were arrested. Law enforcement officers "discovered numerous uncapped syringes used for methamphetamines and knives on the floor within reach of both juveniles, including a knife in the living room with a 5-6 inch blade and 2 uncapped syringes found in the couch." Law enforcement also found methamphetamines and narcotics present inside the home. Custody of both boys was returned to Mother six months later on 19 July 2018. Father was incarcerated at the N.C. Department of Corrections.

The juveniles were again adjudicated as neglected a year later on 25 July 2019. While conducting a traffic stop of a vehicle Mother was driving on 1 March 2019, law enforcement found "28.27 grams of methamphetamine, 9 MM bullets, Clon[az]epam, precut corner bags, a measuring spoon[,] and brass knuckles." Kevin, the older son, and two other adults were also present inside the car. Nineteen days later, law enforcement found methamphetamine, needles, baggies with drug residue, drug paraphernalia, and a suboxone patch in the home where the juveniles were living. Kevin and Michael both tested positive for methamphetamine and amphetamines and were removed from the home. Custody was again returned to Mother on 6 July 2020, because Mother represented she was no longer staying with Father, who had not completed his case plan. Father returned to the home within two days after

Mother had regained custody.

The juveniles were adjudicated neglected for the third and most recent time on 21 December 2020. The juveniles were taken into DSS's custody on 7 October 2020 and have since remained outside of Mother's and Father's home.

When most recently adjudicating the children as neglected, the trial court found: (1) the juveniles were left alone on two separate occasions in July and August 2020; (2) Mother failed to bring Michael to his MRI appointments on three separate occasions, which were critical to Michael's ongoing follow-up care for brain cancer; (3) a domestic violence altercation purportedly occurred on 6 October 2020 between the parents in the presence of the juveniles where Mother stabbed Father in the hand with a pair of scissors; (4) DSS was unable to access the home because the parents' bedroom was padlocked; (5) Father admitted to recent substance abuse; (6) Mother refused one hair follicle test and three urine drug screens; (7) Mother and Father asserted and held themselves as being separated, but they appeared to be living together during each of the social worker's multiple home visits; and, (8) Michael tested positive for amphetamines and methamphetamines.

At the disposition hearing, the trial court set forth reunification requirements, specifically for Mother:

> a. Mother shall obtain a Comprehensive Clinical Assessment from a certified provider acceptable to [DSS,] [and] [p]rovide the assessor with truthful and accurate information.

b. Mother shall follow and successfully complete all the recommendations of the assessment.

c. Mother shall submit to random drug screens.

. . .

g. Mother shall cooperate and/or ensure that the juveniles' medical, dental, developmental evaluations and treatment needs are met and comply with recommendations.

. . .

j. Mother shall obtain and maintain an appropriate and safe residence for the juveniles.

. . .

l. Mother shall provide the Social Worker with a physical residence address, a mailing address if different from the residence address, [and] a current and an operational telephone number. Mother shall promptly update this information with the Social Worker upon any changes.

m. Mother shall sign and keep current any and all releases of information necessary to allow the exchange of information between [DSS] and the providers.

Permanency Planning Review hearings were held on 4 March 2021 and 1 April 2021, and the trial court added the following requirements for Mother in the order filed on 6 May 2021:

a. The mother shall sign a release of information for October Road to enable [DSS] to access the substance use assessment on file.

b. The mother shall sign a release of information for Pardee Hospital, LabCorp, Wolfe, Inc. and Pardee Urgent Care for any records concerning the mother's drug use and/or drug

- 4 -

screens.

The trial court found after the hearing to terminate parental rights:

27. The mother has completed several Comprehensive Clinical Assessments. However, she did not provide truthful and accurate information on the assessments.

28. On October 27, 2020, the mother completed an assessment with RHA. She provided inaccurate information and was asked to complete another assessment.

29. On March 11, 2021, the mother completed an assessment with October Road. The mother admitted to the Social Worker that she lied on the assessment to try to control the service recommendations.

30. On May 13, 2021, the mother completed an assessment with MAHEC. Again, the mother provided inaccurate information and was asked to complete a new assessment.

31. On June 16, 2021, the mother was voluntarily committed to Advent Hospital due to suicidal ideation. The mother denies she was there for suicidal ideation, but rather she was hoping to be admitted to address her drug use. At Advent the mother admitted to using methamphetamine, marijuana[,] and heroin. The mother was discharged on June 23, 2021.

32. The mother has not completed any of the recommendations from the various assessments.

33. RHA recommended medication management, group therapy, individual therapy, and peer support.

34. The October Road assessment recommended 240 hours of partial hospitalization for Stimulant Use Disorder, Severe and Cannabis Use Disorder.

35. MAHEC recommended Al-Anon meetings and

individual therapy.

36. Advent recommended outpatient therapy with Blue Ridge Health and to contact First Contact.

37. On October 7, 2021, the court required the mother to complete a full psychological assessment at GRANDIS.

38. The first available appointment was February 2, 2022. The mother completed the assessment on this day.

39. During the assessment the mother stated she resides with her husband, [Redacted]. She stated there are verbal conflicts with her husband. She admitted to using marijuana 3 days a week, twice a day and that she last used methamphetamine one month prior.

40. The GRANDIS assessment recommended intensive substance abuse treatment, group therapy, parenting classes, intimate partner violence classes[,] and mental health treatment services. The mother received these recommendations 10 days prior to today's hearing.

41. The prognosis from the GRANDIS evaluation found that the mother's treatment motivation is somewhat lower than is typical of individual[s] being seen in a treatment setting. Her responses suggest that she is satisfied with herself as she is, that she is not experiencing marked distress and[,] as a result, she sees little need for changes in her behaviors. As such, the mother would be at risk for early termination from her programs.

42. From December 2020 through March 2022, [DSS] requested the mother to submit to 39 drug screens. The mother did not submit to any of those screens.

43. The mother stated on multiple occasions that she will not take drug screens as it would not benefit her situation to do so.

44. The mother admitted on the stand that she did not

submit to the requested drug screens because she had smoke[d] marijuana throughout the case and every now and then used methamphetamine.

45. The mother stated she used marijuana and methamphetamines because she was not allowed to see her children.

46. On July 22, 2021, and September 10, 2021, the mother stated she thinks she would benefit from rehab but does not need detox.

47. On November 11, 2021, the mother entered a detox program at ADATC, but left against recommendations on November 22, 2021.

48. The mother is very forthcoming about the father's fentanyl use.

. . .

75. The parents reside together. The Social Worker has not been permitted access to the inside of the parent's home. The Social Worker scheduled a home visit for February 21, 2021, nobody was home. The home visit for March 3, 2021, was canceled by the mother as she stated she was sick. On April 27, 2021, the parents spoke to the Social Worker outside the home but would not let the Social Worker in the home. On July 22, 2021, the parents did not permit the Social Worker to go into the home. On August 16, 2021, the Social Worker made an unannounced home visit, nobody answered the door. On August 31, 2021, the mother canceled the home visit. On January 26, 2022, the mother cancelled the home visit and rescheduled it to January 31, 2022. On January 31, 2022, the parents did not answer the door when the Social Worker arrived for the home visit. The Social Worker made an unannounced visit on March 17, 2022[,] and spoke with the mother outside. The mother agreed to allow the Social Worker to see the inside of the home on March 21, 2022. On March 21, 2022, the mother canceled the visit.

. . .

77. The mother is not consistent in maintaining contact with the Social Worker. She responds to messages and calls selectively. She does not consistently attend scheduled Child and Family Team Meetings.

78. The mother is not consistent about updating the Social Worker with an active telephone number. The mother does have a consistent email address and has maintained the same psychical [sic] address throughout the case.

79. The mother has signed some of the requested releases of information, but not all of them. The mother failed to sign the releases of information for Pardee Urgent Care and Wolfe, Inc as well as from ADATC detox and Appalachian Counseling[,] which were specifically ordered in the order filed on May 6, 2021. The mother stated since she did not submit to any drug screens, she did not see the necessity for signing these releases of information.

The trial court concluded grounds existed for the termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2021). The court specifically found and concluded Mother had: (1) neglected the individuals and there was a probability such neglect would re-occur, (2) willfully left the juveniles in foster care or placement outside of the home for more than twelve months without reasonable progress, and, (3) for the six months prior to the filing of the petition for termination willfully failed to pay costs for care of the juveniles despite being able to do so.

The court ordered that the parental rights of Mother and Father be terminated on 20 April 2022. Father did not appeal. Mother filed a timely notice of appeal.

## II.  Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2021).

### III. Issues

Mother argues the trial court improperly ordered the termination of her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2021).

She also argues collateral estoppel prevents the trial court from considering certain facts from the previous two orders adjudicating the juveniles neglected or the requirements contained in Mother's prior case plans.

### IV. Termination of Parental Rights

"[A]n adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. . . . [I]f this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citations omitted).

### A. Standard of Review

This Court reviews a trial court's decision to terminate parental rights by examining "whether the court's findings of fact are supported by clear, cogent[,] and convincing evidence and whether the findings support the conclusions of law. Any unchallenged findings are deemed supported by competent evidence and are binding on appeal. The trial court's conclusions of law are reviewed de novo." *In re T.B.*, 380 N.C. 807, 812, 2022-NCSC-43, ¶ 13, 870 S.E.2d 119, 123 (2022) (quoting *In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 24, 862 S.E.2d 180 (2021)).

## B. Analysis

A trial court may terminate parental rights for neglect under N.C. Gen. Stat. § 7B-1111(a) where the parent has neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101. *Id.* at 812, ¶ 14, 870 S.E.2d at 123. Our general statutes define a neglected juvenile as one "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." *Id.*; N.C. Gen. Stat. § 7B-101(15) (2021).

Four statutory bases are available to terminate a parent's rights under N.C. Gen. Stat. § 7B-1111(a). Under the second prong, a trial court may terminate parental rights after:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2).

The trial court is not strictly limited to the initial twelve months following separation when reviewing a parent's progress under § 7B-1111(a)(2), and "evidence gleaned from the twelve-month period immediately preceding the petition would provide the trial court with the most recent facts and circumstances exhibiting a parent's progress or lack thereof." *In re Pierce*, 356 N.C. 68, 74-75, 565 S.E.2d 81, 86

(2002).

"Leaving a child in foster care or placement outside the home is willful when a parent has the ability to show reasonable progress, but is unwilling to make the effort." *In re A.J.P.*, 375 N.C. 516, 525, 849 S.E.2d 839, 848 (2020) (citation, internal quotation marks, and alterations omitted).

"[A] respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress during the year preceding the DSS petition sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.W.*, 173 N.C. App. 450, 465–66, 619 S.E.2d 534, 545 (2005) (citation and internal quotation marks omitted), *aff'd per curiam*, 360 N.C. 361, 625 S.E.2d 780 (2006).

Our Supreme Court has stated:

> Parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2). However, in order for a respondent's noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal from the parental home.

*In re J.S.*, 374 N.C. at 815-16, 845 S.E.2d at 71 (citation, internal quotation marks, and alterations omitted).

Our Supreme Court also upheld the termination of parental rights under N.C.

- 11 -

Gen. Stat. § 7B-1111(a)(2) in *In re B.J.H.*:

> At the time of the 7 February 2020 adjudicatory hearing, Ben and John had been in an out-of-home placement for more than twenty-six months. Respondent-father had belatedly obtained a psychological evaluation but had yet to pursue the recommended treatment. Regardless of whether he obtained a substance abuse assessment in June 2018, respondent-father had refused his most recent drug screen and had tested positive for both amphetamine and methamphetamine in the preceding drug screen. Although he had completed parenting classes and consistently attended visitations with the children, respondent-father had not made satisfactory progress toward stable employment or housing suitable for the children. Because respondent-father had not meaningfully improved the conditions leading to the children's removal after more than two years, we affirm the trial court's adjudication as sufficiently supported by the evidence contained in the record. Having upheld the trial court's adjudication under N.C.G.S. § 7B-1111(a)(2), we do not need to address respondent-father's arguments pertaining to N.C.G.S. § 7B-1111(a)(1).

*In re B.J.H.*, 378 N.C. 524, 555, 2021-NCSC-103, ¶ 65, 862 S.E.2d 784, 806 (2021), (citing *In re J.S.*, 374 N.C. at 819-21, 845 S.E.2d 66; and *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417 (2019)).

The facts before us are similar to those in *In re B.J.H. Id.* Just like respondent-father there, Mother "belatedly obtained" several psychological and substance abuse evaluations, but she was not candid with accurate information and failed to comply with the recommendations. *Id.* Mother was recalcitrant. She "stated on multiple occasions that she will not take drug screens as it would not benefit her situation to do so" and refused thirty-nine drug screens. She also "admitted on the stand that she

did not submit to the requested drug screens because she had smoke[d] marijuana throughout the case and every now and then used methamphetamine."

Both Kevin and Michael have previously tested positive for methamphetamines and amphetamines while in Mother's care. Mother has failed to cooperate and attend the juvenile's medical appointments, including failing to take Michael for multiple scheduled medical visits to monitor and treat his brain cancer. In sum, Mother has willfully failed to meaningfully improve the conditions leading to Michael's and Kevin's removal and to demonstrate reasonable progress to overcome those conditions. *Id.*

We need not review any of Mother's other arguments regarding termination of parental rights under the first and third prong of N.C. Gen. Stat. § 7B-1111(a), because another ground for termination exists under N.C. Gen. Stat. § 7B-1111(a)(2). *Id.*; *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71. Mother's argument is overruled.

## V. Collateral Estoppel

Mother argues collateral estoppel should have barred the trial court from considering and referencing prior orders and cases involving Mother's neglect of the juveniles.

At the hearing, the social worker testified about the circumstances of the first two petitions and adjudications without objection from Mother. Petitioner also presented the adjudication orders and permanency planning order as exhibits and these were admitted as evidence without objection from Mother.

Mother's argument is waived, because she failed to properly preserve this issue by raising the issue or objecting at trial. N.C. R. App. P. 10(a)(1) (explaining that "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . [and] obtain[ed] a ruling upon the party's request, objection, or motion."); *In re D.R.S.*, 181 N.C. App. 136, 140, 638 S.E.2d 626, 628 (2007) ("Respondent argues next that the proceedings for termination of parental rights were barred by principles of collateral estoppel and *res judicata.* However, respondent raises the defenses of collateral estoppel and *res judicata* for the first time on appeal, and thus failed to properly preserve the issue."). Mother failed to object to Petitioner's evidence regarding the two prior adjudications. In addition, Mother testified about the prior adjudications and presented testimony and evidence spanning the entire time period of DSS's involvement, from 2015 to the time of the hearing. This argument is dismissed.

## VI.    Conclusion

The trial court properly terminated Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). Mother's repeated failure to submit to drug screens, reluctance to submit to psychological and substance abuse evaluations or provide releases, and her inability to comply with the juveniles' medical care collectively demonstrate and support the trial court's finding of her lack of reasonable progress. *In re B.J.H.*, 378 N.C. at 555, ¶ 65, 862 S.E.2d at 806.

Mother has consciously and repeatedly chosen a life of crimes, addictions, and use of dangerous and illegal narcotics, to the degree both young sons tested positive for these illegal drugs. Her choices, actions, and neglect have repeatedly placed her sons at gross and substantial risks of harm. While there are no "three strikes" in termination of parental rights cases, the record before us clearly supports a conclusion that Mother has been presented with a multitude of opportunities for help and treatments to overcome her addictions and illegal drug use to be reunited with her sons. She utterly failed to recognize the need for and take advantage of these opportunities to overcome her poor and life-threatening choices in preference to caring for and raising her sons.

Mother's other arguments regarding termination of parental rights under the first and third prong of § 7B-1111(a) are moot, because grounds to affirm termination exists under N.C. Gen. Stat. § 7B-1111(a)(2). *Id.*; *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71.

Mother's collateral estoppel argument was not preserved and is dismissed. N.C. R. App. P. 10(a)(1); *In re D.R.S.*, 181 N.C. App. at 140, 638 S.E.2d at 628. The order terminating Mother's parental rights is affirmed. *It is so ordered.*

AFFIRMED.

Chief Judge STROUD and Judge ARROWOOD concur.